**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**

FILED
2008 Aug 15 PM 02:47
CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.    08-30315 |
| | ) | |
| Troy A. Purney and | ) | Chapter 13 |
| Pamela D. Purney, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION REGARDING DEBTORS' OBJECTION TO CLAIM

The matter is before the court on Debtors' Objection to Household Realty Corporation's Proof of Claim [Doc. # 20]. At issue is a debt owed by Debtors to Household Realty that is secured by their home. Household Realty's proof of claim states that Debtors owe it a total of $231,226.16, including a pre-petition arrearage of $20,083.26. Debtors do not dispute the amount of the arrearage or the principal balance owed but argue that the claim includes unmatured interest and unreasonable fees. A hearing was held that Debtors, their counsel and counsel for Household Realty attended in person and at which the parties had the opportunity to present testimony and other evidence in support of their respective positions.

The court has jurisdiction over this case under 28 U.S.C. §1334 and the general order of reference entered in this district. Proceedings to determine the allowance or disallowance of claims against the estate are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(B). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). Regardless of whether specifically referred to in this Memorandum of

Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, Debtors' objection will be sustained.

## FACTUAL BACKGROUND

At the hearing, Household Realty offered the testimony of Loretta Steffani,[1] a branch sales manager at Beneficial Ohio, which, according to Steffani, is simply a different "brand name" but is the same company as Household Realty. Pamela Purney ("Purney") testified on behalf of Debtors.

On April 24, 2002, Debtors entered into a Loan Repayment and Security Agreement under which Household Realty loaned them $169,010.51 at 10.524% interest. Steffani explained a Payment History that was prepared by an individual at Household Realty's main office, a document made and kept in the regular course of business. [Cr. Ex. 1]. She testified that the Payment History is a true and accurate record of Debtors' payments on this account. The Payment History is a chart that sets forth the date and amount of each payment made on Debtors' loan and how each payment was applied, that is, the amount applied to interest, principal and charges for late payments. It also sets forth an "Interest Shortage" column that states the total amount of interest owed on a given date due to missed payments and partial payments being made that were insufficient to cover the accrued interest. Although the first payment was due on May 24, 2002, the Payment History shows that no payment was made until August 5, 2002, and then only a partial payment was made, resulting in an interest shortage on that date of $3,585.59 and no payment of principal. Thereafter, Debtors made payments at irregular intervals. The payments were generally insufficient to cover the accrued interest so that the interest shortage continued to grow.

By July 29, 2003, the interest shortage owed on Debtors' account totaled $10,209.37. On August 31, 2003, Household Realty moved the total interest shortage amount to what Steffani referred to as the "deferred interest bucket." She explained that the effect of treating the accumulated interest shortage as deferred interest was to tack that amount on to the end of the loan.[2] Then, rather than each payment being applied only to pay down the accumulated interest, if Debtors had made payments going forward in accordance with the loan agreement, the payments would have served to reduce the principal balance of the loan as well as to pay the accrued interest for that period. However, the Payment History shows, and

---

[1] The court is unsure of and the record does not show the correct spelling of the witness's last name.

[2] Although deferred interest was tacked on to the end of the loan, it was not simply added to the principal balance. It was accounted for separately so that interest was charged on the principal balance only and not on the deferred interest balance. According to Steffani, Debtors loan was a simple interest loan.

2

Steffani testified, that over the course of over five years, Debtors seldom made the required monthly payment. As a result, accrued interest continued to grow and Household Realty repeatedly moved the interest shortage to the "deferred interest bucket." In addition, on January 31, 2006, Household Realty was required to obtain Lender Placed Insurance on Debtors' home, which resulted in their monthly payment being increased from $1,549.06 to $1,685.98.

By February 22, 2007, the Payment History shows that the principal owed on Debtors' loan was $165,409.09 and the deferred interest owed was $46,551.72. It shows that no payments were made between that date and January 28, 2008, the date Debtors filed their Chapter 13 bankruptcy petition. Interest that had accrued during this 344-day time period totaled $16,406.12.[3] Thus, according to the Payment History, the total principal and interest owed by Debtors on the date of filing is $228,366.93 ($165,409.09 + $46,551.72 + $16,406.12).

Purney also testified regarding payments made by Debtors on their mortgage debt. According to Purney, Debtors began making weekly payments in May 2002 and continued to do so through 2002 and into 2003. She had no records of these alleged payments and did not know the amounts of the payments. However, she testified that she knows they missed some payments and that some weeks they paid "a little bit" and paid more in other weeks. When asked if the Payment History included all of her payments, she testified that she could not remember as far back as the year 2002. Because of its vagueness and her confessed lack of memory, as well as the lack of records to substantiate her testimony and to contradict the accuracy of the Payment History, the court does not find Purney's testimony credible with respect to payments allegedly made on the loan. Rather, with one modification discussed below, the court credits Steffani's testimony and the Payment History regarding the payments made and the principal and interest balance owed on the date Debtors filed their Chapter 13 bankruptcy petition.

On December 15, 2006, Debtors made a payment in the amount of $3,400. The Payment History shows that $2,715.50 of that amount was applied to foreclosure fees. Steffani had no knowledge regarding the foreclosure fees and they are otherwise unsubstantiated.[4] At the time of the payment, Debtors had an interest payment shortage of over $12,000. It is appropriate, therefore, to consider the $2,715.50 as a payment of interest and to deduct that amount from the principal and interest balance that is otherwise

---

[3] Although the Payment History shows that an interest shortage of $16,406.12 was moved to deferred interest on February 1, 2008, that amount is the accumulated interest as of January 28, 2008, and is calculated as follows: [344 x (.10524 x 365)] x 165,409.09.

[4] According to Purney, the foreclosure action against their home was not commenced until mid-2007.

3

indicated in the Payment History and to which Steffani testified. Doing so results in a principal and interest balance on the date Debtors filed their bankruptcy petition of $225,651.43.

As discussed above, Household Realty's proof of claim states that Debtors owe it a total of $231,226.16, including an arrearage of $20,083.26. [Ex. 2]. In its response to Debtors' Objection, Household Realty explains the $20,083.26 arrearage as consisting of $162.50 for a property inspection, $385 for Broker Price Opinion, $60 for nonsufficient fund fees, and $19,475.76, which covers missed payments from March 1, 2007, through January 1, 2008. In an attachment to its proof of claim, Household Realty provides an Itemization Statement of amounts owed by Debtors. [*See id*. at 2]. The Itemization Statement includes a principal balance owed of $165,409.09, a pre-petition arrearage of $19,475.76, and an entry labeled "Principle (sic) and Interest" in the amount of $231,226.16. In addition, the statement itemizes a total of $742.59 in fees and expenses, including $162.50 for property inspection, $385 for Broker Price Opinion, $60 for nonsufficient fund fees, and $135.09 for "forced placed insurance coverage." [*Id.*]. Although Steffani testified, and the Payment History indicates, that lender placed insurance was in effect as of January 31, 2006, she had no knowledge regarding the remaining itemized fees and expenses and they are otherwise unsubstantiated.

## **LAW AND ANALYSIS**

A properly executed and filed proof of claim constitutes "*prima facie* evidence of the validity and amount of the claim." Bankruptcy Rule 3001(f). When an objection is filed, the objecting party bears the initial burden of producing sufficient evidence to rebut the presumption of validity given to the claim. *In re Nelson,* 206 B.R. 869, 878 (Bankr. N.D. Ohio 1997). The burden then shifts to the claimant to prove the validity and amount of the claim by a preponderance of the evidence. *Id.* While the burden of going forward shifts during the claims objection process, the ultimate burden of persuasion is always on the claimant to prove the claimed entitlement. *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991).

In this case, Debtors have met their burden to rebut the presumption of validity afforded Household Realty's proof of claim by pointing out the inherent inconsistencies in the filed proof of claim documents. The Loan Repayment and Security Agreement shows that the original amount of the loan was $169,010.81. On the date Debtors filed their petition, they owed a principal balance of $165,409.09. None of the remaining figures in the Itemization Statement add up to the $231,226.16 set forth on the face of the proof of claim.

Household Realty in essence acknowledges that the amount of its claim is not substantiated. Nevertheless, it argues that it has proven that the principal and interest balance at the time of filing was

4

$228,366.93, as Steffani testified and as indicated in the Payment History, and that this amount together with the $742.59 in itemized fees and expenses, which totals $229,109.52, should be its allowed claim. However, the court disagrees. and finds that Household Realty has met its burden of proving its claim only as to $225,651.43. Under 11 U.S.C. § 502(b), once an objection is made the court "shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount...." As discussed above, Household Realty's figure does not include $2,715.50 of a payment made on December 15, 2006, that the Payment History indicates was applied to foreclosure fees that are wholly unsubstantiated. Also as discussed above, the $229,109.52 amount includes fees and expenses that are unsubstantiated by any testimony or documentary evidence. As such, the court will sustain Debtors' Objection and will allow Household Realty's secured claim only to the extent of $225,651.43. Included in this amount is the undisputed prepetition arrearage owed in the amount of $20,083.26.[5]

A separate order will be entered in accordance with this Memorandum of Decision.

---

[5] The arrearage includes the missed payments from March 1, 2007, through January 1, 2008, and therefore includes the interest accrued during that period. The Payment History notes that on February 1, 2008, the prepetition interest shortage was moved into the "deferred interest bucket." Although it appears then that all of the unpaid interest accrued prepetition was tacked on to the end of the loan as explained by Steffani, to the extent that such interest is paid pursuant to Debtors' confirmed Chapter 13 plan, which provides for the "cure and maintain" treatment of Household Realty's claim permitted by 11 U.S.C. § 1322(b)(5), it may not continue to be "tacked on to the end of the loan."

5